POSTED ON WEBSITE
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No.  25-10429-F-B-7 |
| | ) |
| **LOUIE J. ESPARZA JR. and** | ) |
| **COLLEEN K. DOUGHERTY,** | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |
| SHEILA MARCUM; AARON MARCUM; | ) Adv. Proc. No. 25-01015-B |
| and KIM MARCUM, | ) |
| | ) Docket Control #ELR-002 |
| Plaintiffs, | ) |
| | ) |
| v. | ) Honorable René Lastreto II |
| | ) |
| LOUIE J. ESPARZA JR. and | ) |
| COLLEEN K. DOUGHERTY, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

Sheila Marcum, Aaron Marcum, and Kim Marcum ("Sheila," "Aaron," and "Kim," collectively "the Plaintiffs") move for default judgment as to Defendants Louie J. Esparza Jr. ("Esparza") and Colleen K. Dougherty ("Dougherty," and collectively "Defendants" or "Debtors"). Doc. #60 et seq.  The Defendants are the debtors in the underlying Chapter 7 bankruptcy proceeding, Case No. 25-10429.The Defendants are not represented by counsel in this adversary proceeding.

The Plaintiffs have previously sought default judgment against Dougherty, but that motion was denied without prejudice by an order dated July 31, 2025, entered by Judge Neimann sitting

in while the undersigned was indisposed. Docs. #32, #50.  At that time, the Plaintiffs did not seek default judgment against Esparza because he had responded to the Complaint by way of a *pro se* filing that was later stricken by a separate order entered by Judge Niemann in response to Esparza's failure to respond to an Order to Show Cause. Docs. #13, #47.  The Plaintiffs now seek a second bite at the apple by moving for default judgment against both Defendants, neither of whom have responded meaningfully to this adversary proceeding other than Esparza's stricken filing.

The filings accompanying the motion are voluminous, totaling 18 separate entries for affidavits, exhibits, and requests for judicial notice.  See Docket entries for DCN ELR-2.

This motion was set for hearing on 28 days' notice as required by Local Rule of Practice ("LBR") 9014-1(f)(1).  Thus, pursuant to LBR 9014-1(f)(1)(B), the failure of any party in interest (including but not limited to creditors, the debtor, the U.S. Trustee, or any other properly-served party in interest) to file written opposition at least 14 days prior to the hearing may be deemed a waiver of any such opposition to the granting of the motion. Cf. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995). When there is no opposition to a motion, the defaults of all parties in interest who failed to timely respond will be entered, and, in the absence of any opposition, the movant's factual allegations will be taken as true (except those relating to amounts of damages). *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

Neither Defendant has responded to this motion, and neither is represented by counsel in this adversary proceeding and they

2

are in default.  They are represented in their underlying Chapter 7 proceeding.

The court's docket reflects the following filings and dates relevant to this matter:

| Doc. #1 (4/11/25) | The complaint is filed. |
|---|---|
| Doc. #8 (4/15/25) | The certificate of service of summons and complaint is filed. Dougherty and Esparza are both served at their place of residence. |
| Doc. #11 (5/13/25) | The request for entry of default and certificate of service a refiled as to Dougherty. |
| Docs. #13, #14 (4/14/25) | Esparza's "Opposition" is filed along with a document styled as a "Notice." |
| Doc. #19 (5/16/25) | Entry of default and Order re: Default judgment procedures as to Doughtery. |
| Doc. #29 (6/12/25) | Order to show cause("OSC")entered as to Esparza. |
| Docs. ##32-37 (6/16/25) | Motion/application for entry of default judgment as to Dougherty. |
| Doc. #47 (7/16/25) | Esparza does not respond to the OSC. An order is entered striking Esparza's "Opposition" and "Notice." Esparza's default is entered. No other responses by either Defendant have been or will be filed. |
| Docs. #48, #50 (7/30-31/25) | The motion for entry of default as to Dougherty is denied for the reasons stated on the record and in the court's July 30, 2025,prehearing disposition. An order to that effect is issued the next day. |
| Docs. ##60-80 (1/6/26) | The instant motion for entry of default as to both Defendants and accompanying documents are filed. No party has responded to the motion. |

**JURISDICTION**

The United States District Court for the Eastern District of California has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b) because this is a case arising under title 11. This court has jurisdiction to hear and determine this matter by reference from the District Court under 28 U.S.C. §157(a).  This is a "core" proceeding under 28 U.S.C. § 157(b)(2)(I) (dischargeability) and (J)(objections to discharge).  Venue is proper pursuant to 28 U.S.C. § 1409(a) because this adversary

3

proceeding arises in a bankruptcy case pending in this judicial district.

## BACKGROUND

Except where noted otherwise, the facts as outlined below are drawn from the Adversary Complaint (Doc. #1)and the moving papers (Doc. #32 et seq.), specifically (1) the Motion for Default Judgment, (2)Declarations from each of the three Plaintiffs, and (e) a Memorandum of Authorities.

The basis for the claim at the heart of this adversary proceeding is an earlier default judgment obtained on April 5, 2024, ("the State Court Judgment") by Plaintiffs against Esparza and others in the Tulare County Superior Court in Case No. VCU296097 ("the State Court Action"). Plaintiffs originally brought the State Court Action against Esparza, his company Excel Restorations & Construction Management LLC ("ERMC"), and other defendants who settled with Plaintiffs and are not involved in this matter. Dougherty was not a party in the State Court Action.

In the State Court Action, Plaintiffs alleged that Sheila was the victim of elder abuse and fraud and Aaron and Kim also were the victims of fraud, all perpetrated by Esparza and the other State Court Action defendants. More specifically, Plaintiffs raised causes of action for breach of contract, declaratory relief, financial elder abuse-undue influence, negligent misrepresentation, intentional misrepresentation - fraud, deceit, conversion, conspiracy and alter ego. The court notes that some of causes of action are of a sort that could be nondischargeable in bankruptcy while others are not, a topic

which will be addressed in more detail elsewhere in this opinion. Esparza did not defend against the complaint, and the state court entered a Judgment by Default, awarding $643,316.05, which sum includes treble damages and punitive damages. Dougherty was not a party to the State Court Action, and she was not included in the State Court Judgment.

Debtors filed the Main Case on February 14, 2025, in Case No. 25-10429-B-7 (Bankr. E.D. Cal.). Main Doc. #1.  Plaintiffs are listed in Schedule E/F as unsecured creditors. *Id.*

On April 11, 2025, Plaintiffs initiated this non-dischargeability action against both Debtors. Doc. #1.  Esparza did not file an Answer to the Complaint per se but rather filed a somewhat rambling document styled as "Opposition," which was later stricken by the court for reasons not germane to the instant motion. Docs. ##13-15 (Esparza's "Opposition" and accompanying documents), Doc. #29 (Order to Show Cause/Appear), and Doc. #47 (Order Striking "Opposition").

Dougherty neither answered the Adversary Complaint nor made an appearance of any other kind since this adversary proceeding began.  Debtors were represented by Mark Zimmerman in the Main Case, but the Attorney Disclosure Statement submitted in the Main Case states that the employment agreement between Mr. Zimmerman and Debtors does not include "representation with respect to contested proceedings over such issues as to complaints to dischargeability of particular debts." Doc. #1 (Disclosure of Compensation).  Mr. Zimmerman has made no appearance in the adversary proceeding except to file a *Motion to Be Relieved as*

*Attorney of Record for Debtors*, which confirms that he is not representing Debtors in this adversary proceeding.  To the extent Debtors are engaging with this adversary proceeding at all, they are doing so *pro se.*

On June 16, 2025, Plaintiffs filed a motion seeking entry of default judgment as to Dougherty alone. Doc. #32.  On July 30, 2025, the court denied that motion without prejudice on the grounds that evidence submitted by Plaintiffs in support of that motion was "not sufficient to grant a default judgment against a debtor based solely on a separate default judgment obtained against that debtor's spouse in a case in which the first debtor did not even participate." Doc. #48.

On January 6, 2026, Plaintiffs filed a renewed motion seeking entry of default judgment, this time against both Defendants. Doc. #60.  Neither Defendant responded to the instant motion.  The motion was accompanied by extensive proffered evidence in the form of affidavits, requests for judicial notice, and other exhibits. Docs. #62-79.

Among the exhibits are three documents of special interest. The first is the original state court complaint which lists the causes of action for which Plaintiffs were eventually awarded a default judgment against Esparza. Doc. #67 (Exhibit A).  Those causes of action were:

1.    Breach of Contract;

2.    Declaratory Relief;

3.    Financial Elder Abuse – Undue Influence;

4.    Negligent Misrepresentation;

5.    Intentional Misrepresentation – Fraud;

6

        6.　　Deceit;

        7.　　Conversion;

        8.　　Conspiracy; and

        9.　　Alter-Ego.

*Id.*

The second document is the *Supplemental Declaration of Plaintiffs in Support of Application for Default Judgment Pursuant to CCP § 585(d) ("Plaintiffs' Supplemental Declaration")* which was submitted to the state court prior to the prove-up hearing conducted on April 4, 2024. Doc. #69 (Exhibit C). In that document, the Plaintiffs offered the following figures for damages:

1. Damages for Conversion: $42,616.05.

2. Treble Damages for Elder Abuse: $127,848.15.

3. Total pre-judgment interest: $7,560.77 as of April 2024;

4. Punitive Damages: $100,000.00;

5. General Damages: $100,000.00;

6. Special Damages: $197,690.99

　　a. $261.56 for dump costs;

　　b. $10,372.01 for materials spent on fixing the residence;

　　c. $5,737.76 for storage fees for items that had to be removed from the residence;

　　d. $3,282.25 for County Fees;

　　e. $60,034.78 for Quote to repair the Garage;

　　f. $116,00.93 [sic] for Quote to fix the House;

　　g. $2,000.00 for Draftsman Plans;

　　h. $41,025.00 for attorneys' fees ($39,237.50 per *Request to Fix Attorney's Fees* dated March 1, 2024, plus

$1,787.50 from March 30, 2024, through April 1, 2024, for prove-up hearing preparation.

*Id.*

The third document is the *Judgment by Default by Court* entered by the Tulare Superior Court ("the Judgment by Default") on April 5, 2024. Doc. #79 (Exhibit F, pg. 11).  The State Court Judgment is a terse document, but it is the only documentation from the state court which purports to identify in any way the claims for which default judgment was entered, and it appears that the state court granted damages, for the most part, on exactly the basis requested by Plaintiffs save for the addition of $4,813.24 in costs:

| | |
|---|---|
| Principal: | $42,616.05 |
| Special Damages: | $197,690.99 |
| General Damages: | $100,000.00 |
| Interest: | $7,560.77 |
| Costs: | $4,813.24 |
| Attorney Fees: | $41,025.00 |
| SUBTOTAL: | $393,706.05 |
| Treble**: | $149,610.00** |
| Punitive: | $100,000.00 |
| TOTAL: | $643,316.05 |

*Id.*

The court notes what appears to be error in these figures. The Plaintiffs requested treble damages in the amount of $127,848.15, which is equal to three times the conversion damages of $42,616.05. Doc. #69 (Exhibit C).  The *Plaintiffs' Supplemental Declaration* states that the total amount of converted funds was $49,870.00.  But Plaintiffs also concede that Esparza repaid $7,253.95, reducing the conversion damages to $42,616.05. *Id.*  However, in the *Judgment by Default by Court*, it appears that the state court multiplied the pre-reduction

8

conversion damages ($49,870.00) times three to reach the treble damages award ($149,610.00) instead of the post-reduction conversion damages ($42,616.05) which would have yielded treble damages of $127,848.15, the sum requested by Plaintiffs. Doc. #69 (Exhibit C); Doc. 79 (Exhibit F).

There is nothing in the record indicating why the state court based the treble damages award for elder abuse on the total amount converted and ignored the reduction resulting from Esparza's repayment of $7,253.95.  The court is inclined to think this was a scrivener's error on the part of the state court and that the treble damages award should have been $127,88.15 and the total award should have been $636,092.10.

The three Plaintiffs each submitted affidavits in connection with this motion, but while they ostensibly lay out claims for fraud, all three affidavits seek a determination of non-dischargeability as to the State Court Judgment which, as far as the court can tell, is premised on a finding of fraud by the state court judge.

The Defendants filed for Chapter 7 relief on February 14, 2025. Case No. 25-10429, Doc. #1.  Plaintiffs filed this adversary proceeding for determination of non-dischargeability on April 11, 2025. Doc. #1.

On January 6, 2026, Plaintiffs moved for Entry of Default Judgment. Doc. #60 *et seq.*  Neither Defendant has responded to this motion.  On February 25, 2026, the court entered an order exercising its authority to resolve the motion without need for oral argument and took this matter under submission. Doc. #86. The court is prepared to rule.

9

**DISCUSSION**

1. <u>Issue and claim preclusion</u>.

As a threshold matter, the court must clarify what aspects of this non-dischareability action are presently before the court.  At this time, the court will not definitively rule on whether Esparza's acts against the Plaintiffs *in the abstract* give rise to claims which are not dischargeable.  A review of Plaintiffs' voluminous filings leaves the court with the firm impression that Plaintiffs' arguments for a default judgment, as raised in *this* motion rely on the findings (such as they are) of the state court.

Plaintiffs do not address issues of res judicata and/or collateral estoppel (claim and/or issue preclusion) in their filings, and the court will not perform an exhaustive review of those legal doctrines, but the court will summarize them briefly to give context to this opinion.

Before the court can give preclusive effect to the State Court Judgment on account of res judicata (claim preclusion), or issue preclusion, the court must consider the following factors:

1. whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
2. whether substantially the same evidence is presented in the two actions;
3. whether the two suits involve infringement of the same right; and
4. whether the two suits arise out of the same transactional nucleus of facts.

*Price v. Reddin (In re Reddin)*, 626 B.R. 845, 855 (Bankr. E.D. Cal. 2021)(quoting *Robertson v. Isomedix, Inc. (In re International Nutronics)*, 28 F.3d 965 (9th Cir. 1994))(emphasis added).

10

Before the court can give preclusive effect to the State Court Judgment on account of res judicata (claim preclusion), or issue preclusion, the court must consider a slightly different set of five factors:

1. whether the issue sought to be precluded from re-litigation is identical to that decided in a former proceeding;
2. whether issue was actually litigated in the former proceeding
3. whether the issue was necessarily decided in the former proceeding;
4. whether decision in the former proceeding must be final and on the merits; and
5. whether the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding.

*Price*, 626 B.R. at 855 (citing *Cal-Micro, Inc. v. Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003))(emphasis added).

In resolving this matter under either doctrine, the court first looks to one fundamental question: what issues were actually decided in the State Court Judgment that are entitled to preclusive effect? The court's answer to that question renders the other elements of collateral estoppel and claim preclusion irrelevant.

2.    Nondischargeability and Default Judgments.

Pursuant to 11 U.S.C. § 523, an individual debtor may not receive a discharge on certain kind of debts identified as nondischargeable by the Bankruptcy Code. Plaintiffs argue that Esparza's debts arising from the State Court Default are nondischargeable on the following basis:

1. § 523(a)(2)(A): any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
2. § 523(a)(2)(B): any debt arising from the use of a statement in writing (i) that is materially false; (ii) respecting the

11

debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

3. § 523(a)(4): any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

4. § 523(a)(6): any debt arising from a willful and malicious injury.

*See* Doc. #66 (Memorandum of Authorities). The burden of proof in a non-dischargeability action lies with the creditor (here, Plaintiffs) who must prove by preponderance of the evidence that the elements of the relevant § 523(a) provision are met. *Grogan v. Garner*, 498 U.S. 279, 290, 111 S. Ct. 654, 661 (1991) (superseded on other grounds by Congressional statute as recognized by *Osborne v. Kakas*, No. 4:17-CV-00254-JRG, 2018 U.S. Dist. LEXIS 42729, at *4 (E.D. Tex. Feb. 15, 2018). The limits on the dischargeability of debts contained in § 523 should be construed strictly against creditors and in favor of debtor. *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 5 (B.A.P. 9th Cir. 2008).

Plaintiffs' burden is complicated in the instant case by the fact that they must demonstrate a preponderance of the evidence in the context of what might be termed a "double-default": Not only have the Debtor-Defendants failed to respond to this adversary proceeding (beyond Esparza's stricken filings), Plaintiffs also rely on a judgment originally obtained against Esparza (and not Dougherty) because of Esparza's default in the State Court Action rather than through any true litigation.

The entry of default judgment is a two-step process and the court has an affirmative obligation to review the underlying factual allegations and supporting evidence to make sure the plaintiff can prove his prima facie case. Default judgments are governed by Federal Rule of

12

Civil Procedure 55, which is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7055. In order to obtain a default judgment establishing the non-dischargeability of a debt, a two-step process is required: (1) entry of the party's default, and (2) entry of a default judgment. Fed.R.Civ.P. 55(a) and (b); *Brooks v. United States*, 29 F.Supp.2d 613, 618 (N.D. Cal. 1998), *aff'd mem.*, 162 F.3d 1167 (9th Cir.1998). The bankruptcy court is given broad discretion to enter a default judgment in an adversary proceeding, however, the plaintiff is not entitled to such judgment as a matter of right. *Cashco Financial Services, Inc. v. McGee (In re McGee)*, 359 B.R. 764, 771 (9th Cir. BAP 2006), *citing Kubick v. FDIC (In re Kubick)*, 171 B.R. 658, 659-60 (9th Cir. BAP 1994).

The court is merely permitted but is not required to draw inferences in a default judgment context. "In order to do justice, a trial court has broad discretion to require that a plaintiff prove up even a purported prima facie case by requiring the plaintiff to establish the facts necessary to determine whether a valid claim exists that would support relief against the defaulting party." *In re McGee*, 359 B.R. at 773 (emphasis original), *citing Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 823 (entry of default does not automatically entitle a plaintiff to a default judgment, regardless of the general effect of the entry of a default to deem well-founded allegations as admitted); *Quarré v. Saylor (In re Saylor)*, 178 B.R. 209, 212 (9th Cir. BAP 1995) (trial court directed the plaintiff to submit evidence of a prima facie case in support of a default judgment).

*Mendes v. Jacuinde (In re Jacuinde)*, Nos. 08-15509-B-7, 08-1238, 2009 Bankr. LEXIS 5629, at *8 (Bankr. E.D. Cal. Apr. 16, 2009).

The debt which Plaintiffs seek to have declared non-dischargeable arose from the default State Court Judgment. But before the court can determine non-dischargeability, it must first determine the contours of what the State Court Judgment actually established as the basis for Esparza's (and, by virtue of community property law, Dougherty's) liability.

///

13

The Plaintiffs would have the court find non-dischargeability under multiple provisions of § 523(a): undue influence, breach of contract, intentional misrepresentation – fraud, and conversion. Doc. #66 *passim.* In support of those arguments, Plaintiffs rely on affidavits submitted in conjunction with this motion *Id.* But the court finds the affidavits attesting as to what sins Esparza might have committed to be less probative than what the state court actually determined within the four corners of its order.

As noted *supra*, while the State Court Complaint contained several counts, the actual *Judgment in Default* was more refined and seems to have tracked exactly the *Plaintiffs' Supplemental Declaration.* As such, the damages that the state court awarded were as follows (plus costs):

1. Damages for Conversion: $42,616.05.
2. Treble Damages for Elder Abuse: $127,848.15 (erroneously entered as $149,610.00, *see supra*).
3. Total pre-judgment interest: $7,650.77 as of April 2024;
4. Punitive Damages: $100,000.00;
5. General Damages: $100,000.00; and
6. Special Damages: $197,690.99.

The court accepts these damage awards as admitted allegations, but that does not mean that all these awards are nondischargeable just because Plaintiffs insist on viewing them through the lens of § 523. The court must address each aspect of the damages award in turn to determine whether or not they may be properly classified as nondischargeable under the Code in light of the requirement for strict construction of § 523 in favor of debtors. *Sabban*, 384 B.R. at 5.

The court must also make a determination of whether any damages determined to be non-dischargeable include damages owed

14

by Dougherty in her individual capacity (as opposed to damages owed on a community claim) and whether damages are properly awarded to all three Plaintiffs or just to Sheila.

　　　3.　　Dougherty's individual and community property liability.

When the court denied Plaintiffs' prior effort to obtain a default judgment, the court found that Plaintiffs had failed to show that Dougherty, who was not a party to the State Court Action, has any individual liability. That is unchanged. Plaintiffs present no evidence of Dougherty's involvement based on the facts underlying this case. The court must turn next to the question of whether Plaintiffs have a community claim against both Defendants.

> [A] "community claim" is a debt owed by the debtor or the debtor's spouse, which under state law could have been satisfied from community property that would have passed to the debtor's bankruptcy estate, whether or not such property existed at the commencement of the case. Thus, three criteria must be met before an obligation has the status of a community claim: (1) it must be a debt owed by one of the spouses; (2) it must be satisfiable from community property under applicable state law; and (3) the community property from which the debt could be satisfied under state law must be included within the assets which would pass to the debtor's bankruptcy estate, whether or not such assets exist at the commencement of the case.

*In re Soderling*, 998 F.2d 730, 733 (9th Cir. 1993). California is a community property state, and "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code § 760. The same principle applies to debts

///

15

incurred during the marriage, including civil liability against only one spouse:

> (a) Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt. (b) "During marriage" for purposes of this section does not include the period after the date of separation, as defined in Section 70, and before a judgment of dissolution of marriage or legal separation of the parties.

Cal. Fam. Code § 910 (a).

The Defendants filed the underlying Chapter 7 case on February 14, 2025. Main Case Doc. #1. The Plaintiffs are listed on Schedule F, line 4.1 as nonpriority unsecured creditors, and the Schedules also state that the debt was incurred by "Debtor 1 and Debtor 2 only" and that it is for a community debt. *Id.* (at Schedule F). The court notes that on Schedule F, Debtors estimated the Plaintiffs' claims to be worth $0.00. *Id.* Furthermore, the Debtors did not list the State Court Action under Question 9 of their Statement of Financial Affairs, which asked whether Debtors were party to any lawsuit, court action, or administrative proceeding within 1 year prepetition. Doc. #1 (Statement of Financial Affairs). The State Court Judgment was entered less than 1 year prior to the petition date.

Based on their bankruptcy filings, Defendants appear to concede that any debt that may be owed to Plaintiffs is a community claim incurred either before or during the marriage. To the extent that any of Dougherty's assets are her own individual assets and separate property, they are not part of the community

16

estate. But otherwise, a prepetition judgment against Esparza attaches to the assets held as community property by Defendants.

Under § 524 (a)(3) the "community property discharge" is limited to debts other than those determined non-dischargeable. So, if there is a non-dischargeable debt owed by Esparza the community property Esparza and Dougherty may acquire post-petition is not protected by the "community property discharge."

### 4. The award for conversion.

Conversion was the Plaintiffs' seventh cause of action in the State Court Complaint. Doc. #67. The Plaintiffs alleged that Sheila took out a loan for $50,000.00 which was intended to pay for renovations to her home to be performed by Esparza and others. *Id.* Esparza and others "substantially interfered with Plaintiffs' property by knowingly or intentionally taking possession" of that money, preventing Plaintiffs from accessing it, and refusing to return it after the contract was breached and after demands by Plaintiffs. *Id.* The Complaint alleges that the Plaintiffs "did not consent and as a result were harmed." *Id.*

Under California law, "[a] claim of conversion requires only three elements: '(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.'" *Kim v. Kim (In re Kim)*, 2025 Bankr. LEXIS 3265, at *11-12 (B.A.P. 9th Cir. Dec. 17, 2025)(quoting *L.A. Fed. Credit Union v. Madatyan*, 209 Cal.App.4th 1383, 1387, 147 Cal. Rptr. 3d 768 (2012)).

> A judgment for conversion under California substantive law decides only that the defendant has engaged in the "wrongful exercise of dominion" over the personal

17

property of the plaintiff. It does not necessarily decide that the defendant has caused "willful and malicious injury" within the meaning of § 523(a)(6). A judgment for conversion under California law therefore does not, without more, establish that a debt arising out of that judgment is non-dischargeable under § 523(a)(6).

*Peklar v. Ikerd (In re Peklar)*, 260 F.3d 1035, 1039 (9th Cir. 2001).

At the Prove-Up Hearing, Sheila testified that Esparza induced her to sign an agreement whereby he would perform renovations on her home in anticipation of selling it. Doc. #68 (Exhibit B, Prove-Up Hearing Transcript at pg. 10-13). To pay for these renovations, Esparza induced Sheila to take out a loan in the amount of $49,870.00 with New Vision Credit Union ("NVCU"), and Sheila caused the disbursement checks issued by NVCU to be provided to Esparza. *Id.*

Later during the prove-up hearing, the following exchange took place between Plaintiff's counsel, Erika Rascon ("Rascon") and the state court judge:

THE COURT: So are you asking for trouble [sic] and punitive.

MS. RASCON: Yes, Your Honor. We're asking for trouble damages [sic], which is the amount of the converted amount of the 42,000 -- Your Honor, it is right here in front of me. I apologize. We are asking for trouble [sic] of damages in the amount of $127,848.15 and additional punitive of 100,000. So, if you add it all up, it comes out to a total judgment request of $621,554.20.

THE COURT: And the trouble amount is calculated off of what underlying amount?

MS. RASCON: The trouble [sic] amount is based on the amount converted. So that would be the $42,616.05.

THE COURT: Which was the loan amount?

///

18

MS. RASCON: The loan amount was $49,870. But because Mr. Esparza did return $7,253,95, we reduced it for those credits.

*Id.*

This is consistent with the award sought and granted for "elder abuse" in the *Plaintiff's Supplemental Declaration* and the *Judgment by Default by Court*, both of which clearly spoke of an award of treble damages ($127,848.15) that was three times the award for conversion damages ($42,616.05). Doc. #69 (Exhibit C).

The *Judgment by Default by Court* does not explicitly say what the underlying basis for the judgment was. Doc. #79 (Exhibit F). There is no indication that the state court found fraud on the part of Esparza. *Id.* Indeed, even the conversion claim is only a part of the judgment through inference, because the "Principal" amount awarded was $42,616.05, which was the same amount described by Rascon during the Prove-Up Hearing and in the *Plaintiffs' Supplemental Declaration* as being damages for conversion. Docs. #68 (Exhibit B at pg. 25) and #68 (Exhibit C, pg. 2, ¶ 5(a)-(b)).

Furthermore, based on the Prove-Up Hearing Transcript, the court has doubts that enough evidence was placed before the state court to support a finding of conversion anyway. Recall that California law requires the Plaintiffs to show that Sheila had ownership or right to possession of the property (here, the loan proceeds) and that Esparza converted that property by a wrongful act or disposition of property rights. *Kim,* supra.

However, Sheila's own testimony indicates that she herself directed that the loan disbursements were to be paid to Esparza as part of their contractual relationship in order to pay for the

work he was to perform for Sheila. The fact that Esparza took the money and did not perform the work cannot be viewed as conversion because it was Sheila's intent that the money go to him, and if Esparza had done the work as contracted, there would have been no case. What was presented to the state court at the Prove-Up Hearing appears to be a breach of contract rather than conversion, and if the Plaintiffs' theory of conversion were valid, every breach of contract case in which a party took money but did not perform would automatically become an intentional tort.

That is a position rejected by this circuit. In *Lockerby v. Sierra*, the Court of Appeals addressed a situation where a bankruptcy court found an intentional breach of contract to be "nondischargeable as arising from 'willful and malicious injury' under § 523(a)(6) because Sierra possessed the 'subjective intent of harming Lockerby.'" 535 F.3d 1038, 1040 (9th Cir. 2008). The Court of Appeals reversed the bankruptcy court, relying on the Supreme Court's holding *In re Geiger. Lockerby*, 535 F.3d at 1041 (citing *Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 852 (8th Cir. 1997) (en banc)).

> The Supreme Court noted that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself,'" *Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, cmt. a, at 15 (1964) (emphasis in *Geiger*)) and then rejected the expansion of § 523(a)(6) to "a wide range of situations in which an act is intentional, but injury is unintended." *Id.* at 62. The Court then specifically rejected the notion that a "knowing breach of contract" could trigger exception from discharge under § 523(a)(6). *Id.*

*Lockerby*, 535 F.3d at 1041. This outcome is implicit in the Bankruptcy Code itself, as 11 U.S.C. § 365(a) specifically

20

contemplates the discharge of intentional breaches of contract through the option to reject executory contracts and unexpired leases not beneficial to the debtor's estate. *Id. at* 1042-43. "Since the Code expressly permits intentional breaches of contract (making no qualifications with respect to the motive of the breaching party), it would be inconsistent to interpret § 523(a)(6) to render nondischargeable debts stemming from intentional breaches substantially certain to cause injury." *Id.* at 1043.

As an aside, the court notes that Sheila's testimony, if one squints, might have provided a basis for a fraud claim because she testified that Esparza falsely claimed to be a licensed California contractor, though she did not claim to have relied on that statement in agreeing to contract with him. Doc. #68 (Exhibit B at pg. 8). There is no indication in the Prove-Up Hearing transcript that the state court based the award on anything other than conversion and nothing in the *Judgment by Default by Court* that the award was even based on conversion as opposed to breach of contract. See Doc. #79 (Exhibit F at pg. 2 (identifying Aaron and Kim as third-party beneficiaries entitled to performance from the defendants, language that evokes contract damages rather than damages for an intentional tort). *See also Kim,* 2025 Bankr. LEXIS 3265, at \*17 (where state court did not specify basis on which it awarded punitive damages, bankruptcy court cannot assume that a punitive damages award is indicative that claim is nondischargeable under § 523(a)(6)).

Finally, even if the court assumes the existence of a judgment for the intentional tort of conversion, as the *Peklar*

21

Court stated, that alone is insufficient for the judgment to be nondischargeable under § 523(a)(6). 260 F.3d at 1039.

> Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious" injury to another person or to the property of another. "The 'willful' and 'malicious' requirements are conjunctive and subject to separate analysis."

> A "malicious" injury requires: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." A showing of "willful" intent is "[a]n exacting requirement" and "it is satisfied when a debtor harbors 'either a subjective intent to harm, or a subjective belief that harm is substantially certain.'" The injury must be deliberate or intentional, "not merely a deliberate or intentional act that leads to injury."

> Therefore, like § 523(a)(4), § 523(a)(6) also requires a showing of intent. Moreover, the intent requirements of § 523(a)(6) are extremely specific.

*Kim*, 2025 Bankr. LEXIS 3265, at *16 (citations omitted). Nor is the fact that the state court granted punitive damages dispositive. *See generally Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 469 (B.A.P. 9th Cir. 2015)(noting that under California law, punitive damages are available to punish nonintentional but reckless conduct that does not fall within § 523(a)(6)); *Taylor v. Forte Hotels Int'l*, 235 Cal. App. 3d 1119, 1124, 1 Cal. Rptr. 2d 189 (1991)("The act must be knowingly or intentionally done, but a wrongful intent is not necessary.")

In this case, establishing non-dischargeability under § 523(a)(6) requires findings of both "willfulness" and "maliciousness." The willfulness analysis is a subjective standard that "focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s non-dischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain." *Thiara v. Spycher Bros. (In*

22

*re Thiara)*, 285 B.R. 420, 432 (B.A.P. 9th Cir. 2002)(quoting *Carillo v. Su (in Re Su)*, 290 F.3d 1140, 1146 (9th Cir. 2002)).

"A 'malicious' injury [for § 523(a)(6) purposes] involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Thiara*, 285 B.R. at 433 (citations omitted). Both the willfulness and maliciousness tests require an inquiry into the debtor's state of mind. *Id.* And while a willful and malicious state of mind may sometimes be inferred from circumstantial evidence, the court must make findings of fact as to willfulness and maliciousness before § 523(a)(6) is applicable. *Id.*

Here, there was no evidence, even circumstantial, presented before the trial court that spoke to Esparza's state of mind regarding the events in question, nor were there any findings of fact in the state court judgment indicating that the purported conversion was willful and malicious as opposed to reckless, which the BAP defines as "a 'deliberate disregard' of the 'high degree of probability' that an injury will occur." *Plyam*, 530 B.R. at 468. In the absence of such findings, this court cannot say that the State Court Judgment meets the § 523(a)(6) threshold for non dischargeability.

Having found that Plaintiffs have failed to show that the State Court Judgment for conversion does not satisfy the requirements § 532(a)(6), it follows that the other damages awards listed in the *Judgment by Default by Court,* all of which flow from the conversion award, are also dischargeable. However, because the court realizes that the Plaintiffs, unable to rely on the preclusive effect of the State Court Judgment, may seek to

23

prove non dischargeability directly, will address the rest of the damages as itemized by the state court.

    5. <u>Treble Damages for Elder Abuse</u>.

    Following the "Principal" award for conversion, the next award is for "treble damages for elder abuse."  In their Memorandum of Authorities, Plaintiffs assert that these damages are premised on violation of California Welfare and Institutions Code ("CWIC") §§ 16510.30 *et seq.* Doc. #66 at pp. 4-6. CWIC § 16510.30 describes "financial abuse" of an elder or dependent adult as follows:

        (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
            (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
            (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
            (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

        (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

        (c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

24

(d) For purposes of this section, "representative" means a person or entity that is either of the following:
(1) A conservator, trustee, or other representative of the estate of an elder or dependent adult.
(2) An attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney.

Cal. Welf. & Inst. Code § 15610.30. Curiously, in their Memorandum of Authorities, Plaintiffs argue that the state court awarded treble damages for actions by Esparza that (a) constitute false pretenses, (b) were based on false pretenses, or (c) were based on actual fraud under § 523(a)(2)(A). Doc. #66 at pg. 5 (quoting elements for § 523(a)(2)(A) non-dischargeability as stated in *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 350 (B.A.P. 9th Cir. 2012), aff'd by *Van Zandt v. Mbunda (In re Mbunda)*, 604 Fed. Appx. 552 (9th Cir. 2015).

However, this argument is at odds with the arguments presented by Plaintiffs at the prove-up hearing before the state court as quoted *supra*. *See* Doc. #68 (Exhibit B, Transcript of Prove-Up hearing at pp. 25-26). At the prove-up hearing, Attorney Rascon sought treble damages under the elder abuse statute equal to three times "the converted amount" of $42,616.05. *Id.*

*Id.* This is consistent with the award sought and granted for "elder abuse" in the *Plaintiff's Supplemental Declaration* and the *Judgment by Default by Court*, both of which clearly spoke of an award of treble damages for elder abuse ($127,848.15) that was three times the award for conversion damages ($42,616.05). Doc. #69 (Exhibit C).

///

25

Thus, the question before the court is whether treble damages sought under the California Elder Abuse Statutes and premised on damages for conversion are nondischargeable. In the court's view they are *not* nondischargeable under § 523(a)(2)(A) as Plaintiffs argue.  At the prove-up hearing, Plaintiffs based their estimation of treble damages on the underlying damage award for *conversion,* and so, to be deemed non-dischargeable, the Plaintiffs must rely on § 523(a)(6).

The Plaintiffs argue that, notwithstanding their statements at the prove-up hearing wherein they requested treble damages in the amount of $127,848.15, they now argue that they are entitled to the full $149,610.00 in treble damages awarded in the State Court Judgment because it is three times the original loan amount of $49,870.00. Doc. #66 (Memorandum at pg. 20).  Plaintiffs rely on Cal. Civ. Code § 3345(b), which states:

> (b) Whenever a trier of fact is authorized by a statute to impose either a fine, or a civil penalty or other penalty, or any other remedy the purpose or effect of which is to punish or deter, and the amount of the fine, penalty, or other remedy is subject to the trier of fact's discretion, the trier of fact shall consider the factors set forth in paragraphs (1) to (3), inclusive, in addition to other appropriate factors, in determining the amount of fine, civil penalty or other penalty, or other remedy to impose. **Whenever the trier of fact makes an affirmative finding in regard to one or more of the factors set forth in paragraphs (1) to (3), inclusive, it may impose a fine, civil penalty or other penalty, or other remedy in an amount up to three times greater than authorized by the statute, or, where the statute does not authorize a specific amount, up to three times greater than the amount the trier of fact would impose in the absence of that affirmative finding.**
>
> > (1) Whether the defendant knew or should have known that their conduct was directed to one or more senior citizens, disabled persons, or veterans.

26

> (2) Whether the defendant's conduct caused one or more senior citizens, disabled persons, or veterans to suffer: loss or encumbrance of a primary residence, principal employment, or source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen, disabled person, or veteran. (3) Whether one or more senior citizens, disabled persons, or veterans are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

Cal. Civ. Code § 3345(b)(emphasis added).

The emphasized language presents a problem for Plaintiffs because the court has searched in vain for any such affirmative findings regarding the three factors alluded to above. At the prove-up hearing, the state court inquired as to whether Plaintiffs were seeking treble damages and if so in what amount. Doc. #68 (Exhibit B; see quoted language *supra*). And the *Judgment of Default by Court* is a scant, two-page document which makes no findings of fact at all. Doc. #79 (Exhibit F). Indeed, that *Judgment* merely has a line entry for "Treble:  $149,610.00," which, as the court has noted, appears to erroneously award Plaintiffs more than the actual damages sought for conversion. *Id.*

The Plaintiffs bear the burden of proof in a dischargeability action, with § 523 construed against them and in favor of Defendants. In the absence of affirmative findings by

27

the trier of fact (here, the state court judge) that support application of Cal. Civ. Code § 3345(b), this court cannot say that the state court's award of treble damages for elder abuse would be nondischargeable even if the award for conversion was so found.

6. Punitive damages.

The State Court Judgment awarded $100,000.00 for "punitive damages." As noted *supra,* California law allows for a finding of conversion that is nevertheless not intentional within the meaning of § 523(a)(6) and would therefore be dischargeable. In the absence of a finding of the requisite level of willfulness, the court cannot find that the $100,000.00 award for punitive damages would be nondischargeable for the same reasons that the conversion award itself falls outside the scope of § 532(a)(6).

7. Damages awarded to Aaron and Kim.

Finally, the *Judgment by Default by Court* contains the following language relevant to Aaron and Kim: "Judgment is hereby entered that Plaintiffs AARON MARCUM and KIM MARCUM are third-party beneficiaries and are entitled to Defendants, [ESPARZA] and EXCEL RESTORATIONS & CONSTRUCTION MANAGEMENT LLC, performance." Doc. #79 (Exhibit F). This is in reference to that part of the state court complaint which sought a declaratory judgment that Aaron and Kim were third-party beneficiaries to the contract between Sheila and Esparza. But to the extent that the damages awarded to Aaron and Kim were for breach of contract, those damages do not fall within § 523(a). And neither Aaron nor Kim alleges, either before the state court nor in their filings here, ///

28

that Esparza committed any acts *towards them* which represent intentional torts subject to § 532(a) non-dischargeability.

This distinction is grounded in California law. In *Schauer v. Mandarin Gems of Cal., Inc.*, the court stated:

> Further, the absence of an assignment of rights from Erstad precludes plaintiff from maintaining a cause of action for actual fraud. It is axiomatic that plaintiff must allege she "actually relied upon the misrepresentation; i.e., that the representation was 'an immediate cause of [her] conduct which alter[ed] [her] legal relations,' and that without such representation, '[she] would not, in all reasonable probability, have entered into the contract or other transaction.' " Here, Erstad [the Plaintiff's ex-spouse who purchased the diamond ring underlying the civil action] allegedly relied on the representation and entered into the contract of sale. As we have explained, he [Erstad] retained the right, if any, to sue for actual fraud.
>
> As for constructive fraud, the complaint fails to plead facts establishing the requisite fiduciary or special confidential relationship between plaintiff and defendant.
> And even assuming plaintiff could overcome the standing hurdle, fraud causes of action must be pleaded with specificity, meaning "(1) general pleading of the legal conclusion of fraud is insufficient; and (2) every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect." Plaintiff's complaint utterly fails the specificity test, not because she is an inartful pleader, but because those facts that are well pleaded necessarily negate the existence of the facts supporting the requisite elements of fraud.

*Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 960-61, 23 Cal. Rptr. 3d 233, 241 (2005)(holding that ex-wife of Erstad, who bought ex-wife a diamond ring later determined to be worth $23,000.00 less than Erstad paid for it, lacked standing to sue jewelry store for actual or constructive fraud where there was no clearing showing of assignment of Erstad's rights and no

29

evidence of fiduciary or special confidential relationship between the ex-wife and the jewelry store).

Here, there is no indication that Aaron and/or Kim is party to the contract with Esparza and no evidence that Sheila assigned any of her rights to maintain an action against Esparza to Aaron and/or Kim. In the absence of any evidence of actions directed towards Aaron and/or Kim that are nondischargeable, any damages owed to them are dischargeable. This may include any award for special damages, as the State Court Judgment included a "special damages" award of $197,690.99, apparently for out-of-pocket expenses incurred to remediate the damage purportedly done to Sheila's home due to Esparza's non-performance. The record is silent as to whether those expenses were incurred by Sheila or by Aaron and/or Kim on Sheila's behalf. Any future effort to recover for special damages must be accompanied by admissible evidence that such damages flowed out of nondischargeable actions by Esparza toward the person who actually incurred those expenses. The record so far is unclear on who incurred the expenses.

## **CONCLUSION**

This matter comes before the court on a motion for entry of default judgment, one that seeks to hold the State Court Judgment in the amount of $643,316.05 to be nondischargeable in its entirety. However, the court's analysis of the judgment and whether § 523 applies is necessarily confined to the actual text of the State Court Judgment and the inferences that can reasonably be drawn from it where the state court judge did not

explain the basis for the judgment with any specificity. For the reasons outlined above, the court is not persuaded that the "Principal" award of $42,616.05 for conversion damages is nondischargeable. And if the "Principal" award is dischargeable, it follows that all the other damages awarded by the state court would be dischargeable as well.

The court notes that this does not resolve this adversary proceeding to determine non-dischargeability yet but merely holds that the Plaintiffs have not satisfied the high burden of proving non-dischargeability premised solely on the default judgment awarded by the state court and the submissions to this court supporting the motion for entry of default judgment. Accordingly, this motion is DENIED.

It is further ordered that a Status Conference for this case be set for July 29, 2026, at 11:00 a.m. at which time the Plaintiffs may advise the court as to how they plan to proceed with this adversary proceeding. Plaintiffs to submit a Status Report no later than seven (7) days before the Status Conference.

The court will issue a conforming order.

Dated: Jul 14, 2026　　　　　　　　　　By the Court

René Lastreto II, Judge
United States Bankruptcy Court

31

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked ___, via the U.S. mail.

Erika L. Rascon
791 North Cherry Street
P. O. Box 29
Tulare, CA 93275

Louie J. Esparza Jr.
5401 W. Vassar Ave.
Visalia, CA 93277

Colleen K. Dougherty
5401 W. Vassar Ave.
Visalia, CA 93277